# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-2848-17T1
               A-4072-17T1
               A-4631-17T1

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

      Plaintiff-Respondent,

v.

A.T.,

      Defendant-Appellant,

N.G.,

      Defendant.

_____

THE MATTER OF THE
GUARDIANSHIP OF K.S.G.,

      a Minor.

_____

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

      Plaintiff-Respondent,

v.

J.R.H. and A.E.T.,

      Defendants-Appellants,

and

S.F.E.,

      Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF
J.T.E. and A.J.T.,

      Minors.

_____

Submitted April 8, 2019 – Decided April 18, 2019

Before Judges Fasciale and Gooden Brown.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket Nos. FG-07-0191-17 and FG-07-0167-17.

Joseph E. Krakora, Public Defender, attorney for appellant A.T./A.E.T. (Kisha M. S. Hebbon, Designated Counsel, on the briefs).

A-2848-17T1

Joseph E. Krakora, Public Defender, attorney for appellant J.R.H. (Robyn A. Veasey, Deputy Public Defender, of counsel; James D. O'Kelly, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent in A-2848-17T1 (Jason W. Rockwell, Assistant Attorney General, of counsel; Eric J. Boden, Deputy Attorney General, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent in A-4072-17T1 and A-4631-17T1 (Jason W. Rockwell, Assistant Attorney General, of counsel; Lisa D. Cerasia, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for the minor K.S.G. (Meredith A. Pollock, Deputy Public Defender, of counsel; Danielle Ruiz, Designated Counsel, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for the minors J.T.E. and A.J.T. (David B. Valentin, Assistant Deputy Public Defender, on the brief).

PER CURIAM

These three FG cases consist of two consolidated appeals (A-4072-17 and A-4631-17) (the consolidated appeals), and one back-to-back appeal (A-2848-17). In the appeals, defendant J.R.H. (the mother) and defendant A.T. (the

3

father)[1] (collectively defendants) challenge orders terminating their parental rights.

In the back-to-back appeal, the father appeals from a February 13, 2018 order terminating his parental rights to his daughter (K.S.G. or Kelly)[2] born in July 2015. Kelly is thriving with resource parents, who wish to adopt her. The father resisted the services offered by the Division of Child Protection and Permanency (the Division), and struggled with substance abuse problems, unemployment, and lack of stable housing. Judge James R. Paganelli conducted the trial, entered the February 13, 2018 order, and rendered a thorough written opinion.

In the consolidated appeals, defendants appeal from April 26, 2018 orders terminating their parental rights to two children. In A-4631-17, the father appeals from the termination of his parental rights to his daughter (A.J.T. or Anna), born in October 2012, whom he shares with the mother. In A-4072-17, the mother appeals from the termination of her rights to Anna, and to her son

---

[1] The record refers to the father as A.T. and A.E.T.

[2] For the purposes of this opinion, we use fictitious names to protect the identity of the minors. Kelly has a different biological mother, who is not involved in this appeal.

A-2848-17T1

(J.T.E. or John) born in September 2004.[3]  Anna's resource parents wish to adopt her.  The mother struggles with severe alcohol abuse, and refused to complete services.  Judge Nora J. Grimbergen conducted this trial, entered the April 26, 2018 orders, and likewise rendered a comprehensive opinion.

We affirm on each appeal.

I.

Termination of a parent's rights to his or her children raises issues of a constitutional dimension.  See, e.g., In re Guardianship of K.H.O., 161 N.J. 337, 346 (1999); see also In re Guardianship of J.C., 129 N.J. 1, 9-10 (1992).  The Legislature has recognized the importance of this constitutionally protected relationship between a parent and a child by imposing a high burden upon the Division to terminate those rights in a guardianship case.  That burden requires the Division to prove, by clear and convincing evidence, the following four prongs under N.J.S.A. 30:4C-15.1(a):

> (1) The child's safety, health, or development has been or will continue to be endangered by the parental relationship;
>
> (2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm.

_____

[3]  John has a different biological father, who is not involved in this appeal.

A-2848-17T1

Such harm may include evidence that separating the child from his resource family parents would cause serious and enduring emotional or psychological harm to the child;

(3) The [D]ivision has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and

(4) Termination of parental rights will not do more harm than good.

The four prongs of the test are not "discrete and separate," but "relate to and overlap with one another to provide a comprehensive standard that identifies a child's best interests." K.H.O., 161 N.J. at 348. "The considerations involved in determinations of parental fitness are 'extremely fact sensitive' and require particularized evidence that address the specific circumstances in the given case." Ibid. (quoting In re Adoption of Children by L.A.S., 134 N.J. 127, 139 (1993)).

"Because of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to [the judge's] fact[-]finding." Cesare v. Cesare, 154 N.J. 394, 413 (1998). Thus, the judge's findings of fact are not disturbed unless they are "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the

A-2848-17T1

interests of justice." Id. at 412 (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974)).

"When a biological parent resists termination of his or her parental rights, the [trial judge]'s function is to decide whether that parent has the capacity to eliminate any harm the child may already have suffered, and whether that parent can raise the child without inflicting any further harm." N.J. Div. of Youth & Family Servs. v. R.L., 388 N.J. Super. 81, 87 (App. Div. 2006). The judge's factual findings, "should not be disturbed unless 'they are so wholly insupportable as to result in a denial of justice,' and should be upheld whenever they are 'supported by adequate, substantial and credible evidence.'" In re Guardianship of J.T., 269 N.J. Super. 172, 188 (App. Div. 1993) (quoting Rova, 65 N.J. at 483-84). The father argues the Division failed to prove all four prongs of N.J.S.A. 30:4C-15.1(a). The mother contends that the Division failed to prove prongs one, three, and four. Here, the judges' applied the correct law and their findings are supported by substantial credible evidence in the record.

## II.

We begin by addressing the father's contentions that the Division failed to meet its burden as to the four prongs in both trials.

A-2848-17T1

As to prong one, the father argues that there was no substantial, credible evidence in the record to find that Kelly's and Anna's safety, health, or development had been or would continue to be endangered by the parental relationship. He contends that because Anna and Kelly never resided with him, he could not have harmed them. We conclude that there exists substantial credible evidence to support the judges' findings that the Division proved prong one as to Kelly and Anna.

As to Kelly, Judge Paganelli found the uncontroverted testimony of Dr. Peter DeNigris, a psychologist, to be credible. Dr. DeNigris opined that the father was not a viable caretaker. The father had an excessive history of poor judgment, and a lengthy history of substance abuse. He refused to engage in substance abuse treatment, and failed to acknowledge he had a substance abuse problem. The father had an extensive criminal history; a history involving domestic violence; failed to accept his role in the Division's involvement in the family's life; failed to attend visitation; and lacked an understanding of childcare despite attending a parenting skills class.

As to Anna, Judge Grimbergen explained that the father failed to participate in services and consistently engage in visitation. The judge found the father demonstrated a history of poor judgment; including the failure to treat

his substance abuse problems and find stable housing. The judge concluded that Dr. DeNigris, who recited multiple examples of the father's poor judgment, was credible.

The first prong of the best interests test requires that the Division demonstrate that the "child's safety, health, or development has been or will continue to be endangered by the parental relationship[.]" N.J.S.A. 30:4C-15.1(a)(1); K.H.O., 161 N.J. at 352. Thus, a judge examines the effect of the harm that stems from the parent-child relationship over time. N.J. Div. of Youth & Family Servs. v. P.P., 180 N.J. 494, 506 (2004). The court may consider physical and psychological harm and, also, emotional injury in the absence of physical harm. In re Guardianship of R., G. & F., 155 N.J. Super. 186, 194 (App. Div. 1977). The Court has explained that a parent's withdrawal of nurture and care for an extended period – like here – is a harm that endangers the health of a child. In re Guardianship of D.M.H., 161 N.J. 365, 379 (1999). A judge need not wait until the child is actually harmed by a parent's inattention or neglect. Id. at 383.

As to prong two, Judge Paganelli found that the father was unwilling or unable to eliminate the risk of harm that he posed to Kelly. Specifically, the father failed to participate in substance abuse treatment and refused to admit that

he had a substance abuse problem, which made successful treatment unlikely. The father lacked an understanding of parenting skills, failed to comply with services, and did not remedy his parenting problems despite being given ample time. The judge also found that the father was unable to provide a safe and stable home due to his substance abuse, lack of understanding of child development, failure to obtain stable housing, and lack of consistent employment.

As to prong two in the matter involving Anna, Judge Grimbergen held that the father was unwilling to address his substance abuse issues, failed to attend court hearings, and was "serially terminated" from services due to non-compliance. His attendance at visitation was sporadic. The judge accepted Dr. DeNigris's opinion that the father displayed poor judgment, that he had a poor prognosis for achieving sobriety, and that he was unfit to parent. The father was unwilling to eliminate his substance abuse problem. He made little to no effort to engage in a lifestyle that would be conducive to raising children, did not look for employment, and relied on others for financial support and housing. His transient lifestyle led to multiple arrests and incarceration.

As to prong three, Judge Paganelli found that the Division provided reasonable efforts to reunify the father with Kelly. And the judge found that the

Division provided tailored services to meet the father's needs. The judge considered alternatives to termination of parental rights, including relative assessments, kinship legal guardianship (KLG), independent living, and long-term specialized care. All of the alternatives were ruled-out.

As for Anna, Judge Grimbergen found that the Division provided the father with services including substance abuse evaluations, substance abuse treatment, risk assessments, paternity testing, parenting classes, transportation, and visitation. The judge considered alternatives to terminating the father's parental rights, including relative placement options and KLG, but ruled them out. Anna's resource parents wish to adopt her.

Thus, there is ample evidence in the record to support each judges' conclusions that the Division provided reasonable services including substance abuse evaluations, substance abuse treatment, anger management courses, relapse prevention classes, individual and group counseling, family team meetings, paternity testing, drug screenings, psychiatric evaluations, bonding evaluations, psychological evaluations, bus passes and transportation assistance, and visitation and therapeutic visitation. The Division promptly identified and investigated relatives as possible placements for Kelly and Anna. As for Kelly, the Division investigated and ruled out the placement suggestions. And, as for

 A-2848-17T1

Anna, the Division evaluated and ruled-out several potential placements. At the time of trial, both girls were in permanent placements with resource families and had healthy bonds with their respective caregivers.

As to prong four, Judge Paganelli found that terminating the father's rights to Kelly would not do more harm than good. The judge accepted Dr. DeNigris's opinion that the father and Kelly lacked a healthy bond; Kelly would not experience any harm if the judge terminated the father's rights; Kelly shared a healthy bond with her resource parent; and Kelly would experience harm if removed from her resource parent. The judge found that her resource parent was "a capable and loving resource who is committed to adoption."

Relying on Dr. DeNigris, Judge Grimbergen found that the father and Anna lacked a healthy bond. She found that Anna viewed her resource parents as her psychological parents and those individuals could meet her needs. The judge also found that Anna would suffer greater harm if her relationship with her resource parents was severed and that the termination of the father's rights would not do more harm than good.

The fourth prong requires that the Division show that "[t]ermination of parental rights will not do more harm than good." N.J.S.A. 30:4C-15.1(a)(4). To evaluate whether the Division met this criteria, the court weighs the harm

12

that a child might suffer from the termination of parental rights against any harm stemming from the removal from the resource placement. K.H.O., 161 N.J. at 355; N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 108 (2008). Importantly, children should not "languish indefinitely" in a resource placement while a parent attempts to correct parenting difficulties. N.J. Div. of Youth & Family Servs. v. S.F., 392 N.J. Super. 201, 209 (App. Div. 2007). Termination is necessary under certain circumstances to allow children to have a secure and permanent home. See N.J. Div. of Youth & Family Servs. v. B.G.S., 291 N.J. Super. 582, 599 (App. Div. 1996). Here, the judges correctly relied on expert testimony to reach their conclusions. K.H.O., 161 N.J. at 363.

III.

We now turn to the mother's contentions that the Division failed to prove the first, third, and fourth prongs of the best interests test as to John and Anna.

As to prong one, the judge found that the mother harmed the children by her substantial substance abuse problem, her refusal to participate in treatment "meaningfully or consistently," and her repeated unwillingness to submit to urine screenings, despite being court-ordered to do so. The mother's alcohol abuse impaired her ability to function and parent. And the judge found that the mother's inconsistent visitation had caused the children "emotional difficulty."

A-2848-17T1

The judge relied on testimony from Dr. DeNigris, who opined that the mother accepted minimal responsibility for how her actions contributed to the Division's involvement. Dr. DeNigris also opined that she would be unable to maintain sobriety for an extended period of time.

The mother's alcohol problem, and use of other illicit substances, resulted in the children's removal from her care. And afterwards, she continued to drink alcohol and use drugs in an incapacitating manner for years. Moreover, the mother had inconsistent attendance at visitation and struggled to care for the children effectively during those sessions. Again, a parent's withdrawal of care and nurture is harm that negatively affects the health and development of a child. D.M.H., 161 N.J. at 379. Moreover, as time progressed, the mother also struggled with providing a stable home.

The mother argues for the first time that the judge erred by considering her substance abuse evaluation dated July 27, 2016. The admission of the substance abuse evaluation and the judge's acknowledgement of the mother's drinking problem was not an error, much less an error capable of producing an unjust result. See R. 2:10-2. The record reflects that the mother admitted to drinking excessive amounts and conceded to her alcohol dependency during her repeated failed attempts at treatment.

Even without the July 2016 substance abuse evaluation, there was ample credible evidence in the record to support the judge's conclusion that the mother suffered from a substance abuse problem that required treatment. See State v. McCandless, 190 N.J. Super. 75, 79 (App. Div. 1983) (explaining that a judge can make permissible inferences based upon facts and common experience). A trial judge's findings are given deference unless they are "so wide of the mark that a mistake must have been made." N.J. Div. of Youth and Family Servs. v. M.M., 189 N.J. 261, 279 (2007) (quoting C.B. Snyder Realty Inc. v. BMW of N. Am. Inc., 233 N.J. Super. 65, 69 (App. Div. 1989)). Here, the record supports the judge's inference that the mother suffered from an ongoing and pervasive substance abuse problem.

Furthermore, the judge did not refer to the evaluation or the diagnosis in her findings of facts; instead, the judge acknowledged the mother's positive drug test conducted on the same date. The judge did not refer to either the evaluation or the diagnosis in her conclusions of law. The judge based her findings on the testimony of Dr. DeNigris, the mother's routine failure to submit to drug screenings, and the mother's inability to complete substance abuse treatment. Thus, there is no indication in the judge's opinion that she relied upon the July 27, 2016, diagnosis when she formulated her conclusions.

A-2848-17T1

As to prong three, the judge found the Division provided referrals for substance abuse evaluations, substance abuse treatment programs, psychological evaluations, bonding evaluations, family team meetings, individual therapy, visitation, and transportation. Also, the Division explored relative placements, and considered alternatives to the termination of parental rights, including KLG. In fact, the Division considered several alternative placements with family members or family friends prior to seeking the termination of parental rights, but those individuals were ultimately ruled-out or did not timely respond to the Division. The Division is only obligated to assess "each interested relative's ability to provide . . . care and support[.]" N.J.S.A. 30:4C-12.1(a). KLG is not an option when adoption is both feasible and likely. P.P., 180 N.J. at 512-13. Here, the caseworker testified that the plan for Anna was adoption and, therefore, KLG was not available.

As to prong four, the judge found that the mother lacked a healthy relationship with Anna and John. She found that the mother struggled to give both John and Anna attention, did not participate in visitation, and failed to understand that the children may need services to adjust with the transition if reunification occurred.

The judge found that Anna would suffer greater harm if removed from her resource parents, than if the mother's rights were terminated. Anna was thriving in her resource placement where she had been since November 2016. Anna considers her resource parents to be her psychological parents and has a healthy bond with them.

The mother also failed to understand John's needs. Although John lacked an adoptive home, the judge believed that freeing him for adoption provided him with more opportunities to find permanent placement. The judge heard testimony that John would have more opportunities for adoption if he were legally free. The Court has stated that "there will be circumstances when the termination of parental rights must precede the permanency plan." N.J. Div. of Youth & Family Servs. v. A.W., 103 N.J. 591, 611 (1986); see also B.G.S., 291 N.J. Super. at 592-93 (stating that it was not in best interests of a child to indefinitely prolong resolution of the child's status when a parent is unable to provide proper care). Such is the case here.

To the extent that we have not addressed all of the parties' arguments, we conclude that they lack sufficient merit to warrant discussion in this written opinion. R. 2:11-3(e)(1)(E). We otherwise affirm for the reasons expressed by the judges.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2848-17T1